UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TERRY L. BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-4200 |
| | ) | |
| LIBERTY HEALTHCARE CORP., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently civilly detained at Rushville Treatment and Detention Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 86, 106). The motions are granted.

## PRELIMINARY MATTERS

### Plaintiff's Motion (Doc. 89)

The Court granted Defendants' Motion for Leave to File a Document Under Seal to the extent that it sought the Court to seal certain records pending review of the documents and resolution of the pending motion for summary judgment. Text Order entered June 27, 2022. Plaintiff's motion objecting to filing the documents under seal is granted to the extent that Plaintiff seeks the Court to consider his objections and denied as to any other relief requested.

### Defendants' Motion for Leave to File Reply (Doc. 115)

Defendants' unopposed motion for leave to file a summary judgment reply is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was detained at Rushville Treatment and Detention Facility ("TDF") at all times relevant. Defendants were employed at the facility in the following capacities: Defendant Jumper was the facility clinical director; Defendant Carreon was a team leader; and Defendants Parsons, Perez, and Woods were security therapy aides ("STA").

Plaintiff experienced several issues in 2018 related to items he had ordered from outside vendors, packages that he had received from family members, and his interactions with TDF property room staff. Plaintiff raised the issues during group therapy sessions conducted during January-March 2019. (Doc. 1 at 34) (Plaintiff reported during therapy session on January 24, 2019, that he had had issues with an STA in the property room about a watch he had ordered); *id.* at 32 (Plaintiff stated during therapy session on March 27, 2019, that "STA's that work in property are verbally aggressive when they speak to him and he has noticed them giving him

angry looks."); *id* at 36 (Plaintiff stated during therapy session on March 27, 2019, that "STA's that work in property are verbally aggressive when they speak to him and he has noticed them giving him angry looks."). Plaintiff, other residents, and therapists were the only individuals present during group therapy sessions; security staff was not in the room while the sessions took place. Pl.'s Dep. 73:7-14.

Plaintiff also filed several request forms/grievances regarding property that had been approved in December 2018, but that he had not yet received as of March 2019. (Doc. 1 at 38-41). Plaintiff did not mention any of the defendants in these grievances, but Plaintiff testified that at least some of his issues stemmed from his interactions with Defendant Woods in her capacity as a property room STA. *Id.*; Pl.'s Dep. 84:12-16. Non-defendant TDF officials responded that the ordered items had not yet arrived because of vendor delays, that Plaintiff should request a phone call with the vendor, and that he should contact staff in the property room. (Doc. 1 at 38-41).

On September 25, 2019, Plaintiff was on "escort" status, which required him to request an STA escort when moving through certain areas of the facility. Pl.'s Dep. 84:12-14. Plaintiff testified that, on that date, he requested an escort from a non-defendant STA to return to his housing unit after his group therapy session, and that he walked the short distance to his housing unit after the STA had said it was okay. *Id.* 84:5-11. Defendant Woods appeared shortly thereafter, yelled "he's on escort," and later issued Plaintiff a disciplinary ticket for unauthorized movement. *Id.* 88:7-14. Her report states: "[w]hile handing out property at the South Gym this R/O noticed resident T. Berry walk over to Baker unit. Resident Berry is on escorted movement and did not ask the STA at the gym to call for an escort[,] he just walked to Baker without being escorted." (Doc. 107-5 at 3).

Plaintiff had an opportunity at the hearing at a hearing before the TDF Behavioral Committee on September 30, 2019, to present his testimony that the other STA had given him permission to walk unescorted. (Doc. 1 at 27). The committee apparently rejected Plaintiff's defense and found him guilty of unauthorized movement, a major rule violation. *Id.* at 28. The committee placed Plaintiff on close status[1] for seven days. *Id.* While on close status, Plaintiff was not permitted to have his property, he was provided meals and other items through the chuckhole in the door, and he was required to wear a yellow jumpsuit when outside of his cell. Pl.'s Dep. 36:4-9. Plaintiff received an additional 30 days of close status for a major rule violation that occurred a day after the hearing. (Doc. 1 at 30); (Doc. 86-5 at 2) (disciplinary history).

On June 5, 2020, Plaintiff was in dayroom in his housing pod. Pl.'s Dep. 10:11-13. He testified that he was preparing a meal for himself, and that while he was away from his table, another resident who had been folding laundry as part of his assigned task placed a mesh bag with soiled underwear on top of it. *Id.* 13:10-12, 20:13, 25:4-7. The resident placed the bag on the table because his boss told him to put laundry on tables unless residents were playing a game at the table or more than two people were eating. Jumper UMF 44. Plaintiff's table was near the room of the resident to whom the clothing belonged. Pl.'s Dep. 26:1-3.

Plaintiff "caused [the laundry bag] to move to the floor." *Id.* 22:4-5. When the other resident attempted to place the bag back on the table, Plaintiff told him not to do that and tried to push the bag back onto the floor. *Id.* 22:21-23:4. A video of the incident shows the latter half of the interaction: the two struggling over the bag, Plaintiff moving towards the other resident, and

---

[1] The TDF assigns a resident status level to each resident that defines the privileges each resident is allowed. Pl.'s Dep. 66:20-24. A resident may move up a level if he has no rule violations for six months. *Id.* 34:12-14. Residents on "close" status or "temporary special" status are being disciplined or pending disciplinary proceedings, respectively.

the other resident stumbling backwards for several steps.[2] The other resident notified an STA, and the two were separated. *Id.* 27:16-20.

Following review of the video, TDF staff issued disciplinary tickets for fighting to Plaintiff and the other resident and placed them on "temporary special" status pending a hearing. Jumper UMF 42. Temporary special status is nearly identical to close status—no property, food and other items through a chuckhole, and yellow jumpsuits. Pl.'s Dep. 36:4-9.

Plaintiff appeared before the TDF Behavioral Committee, consisting of Defendants Jumper, Carreon, and Parsons, on June 9, 2020. (Doc. 86-5 at 1-2). Between the time of the incident and the hearing, Plaintiff did not have any interactions with these defendants. Pl.'s Dep. 30:8-11. They found him guilty of attempted fighting, placed him on close status for 15 days, demoted him from C-status to general status, and recommended use of black box handcuffs if Plaintiff traveled outside the facility. (Doc. 86-5 at 2); Jumper UMF 34, 35. Plaintiff did not leave the facility while the black box recommendation was in effect. Pl.'s Dep. 40:7-15. According to the Behavioral Committee notes, Plaintiff had previous major rule violations for disruptive conduct, interference with facility operations, and unauthorized movement, all occurring within the previous year. (Doc. 86-5 at 2); Jumper UMF 38.

The same defendants found the other resident involved in the June 5, 2020 incident guilty of insolence, a minor rule violation. (Doc. 97 at 2). They removed him from temporary special status and restored his previously held resident status. (Doc. 97 at 2). The resident did not have any rule violations within the previous year. *Id.* Plaintiff asserts that he received a more severe

---

[2] Plaintiff asserts that the video has been "selectively edited to omit significant portions of said video that even [the other resident]…described happened." (Doc. 110 at 7, ¶ 37). The video appears to show only the latter part of the altercation, but the parties generally do not dispute the events that occurred before it starts. The apparent omission of certain footage, though less than ideal, does not permit a reasonable inference that the video provided inaccurately reflects the events shown.

punishment because he is African American, and the other resident is white. Plaintiff testified that he did not intend to sue Defendant Perez for his role in these events. Pl.'s Dep. 98:3-5.

A package Plaintiff had ordered from an outside vendor arrived while Plaintiff was on close status following the June 9th hearing. (Doc. 1-1 at 14). Defendant Woods returned the package to sender because TDF rules prohibit a resident from receiving property if a resident's status does not allow for it. *Id.* at 14, 21.

## ANALYSIS

### First Amendment Retaliation

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Once a plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). Plaintiff's request forms/grievances are protected activity.

Plaintiff asserts that Defendant Woods issued him a false disciplinary ticket in retaliation for the complaints that he had made about her regarding his property. The requests Plaintiff filed about these issues do not mention Defendant Woods, she did not respond to them, and nothing indicates that she would have been aware of these complaints. Security staff is not present in the room during group therapy sessions, and no reasonable inference arises Defendant Woods knew about Plaintiff's comments during these sessions.

Assuming she did, Defendant Woods' report is inconsistent with Plaintiff's version of events only in that it fails to acknowledge his asserted justification for conduct he otherwise concedes violates the facility's rules. The Illinois Administrative Code requires a TDF employee to prepare an incident report under these circumstances, *see* 59 Ill. Admin. Code § 299.640(b), and another STA's decision to enforce the rules differently does not permit a reasonable inference that Plaintiff's protected activity motivated Defendant Woods' actions. This is especially true considering the approximate six months that elapsed between Plaintiff's protected activity and the alleged retaliatory conduct. Defendant Woods was not involved in Plaintiff's June 2020 disciplinary proceedings, and his resident status at the time required her to return Plaintiff's June 2020 package.

The record does not permit a reasonable inference that Defendant Woods knew about Plaintiff's protected activity or that this activity motivated her decisions. The Court finds that no reasonable juror could conclude that Defendant Woods violated Plaintiff's First Amendment rights.

**Fourteenth Amendment Equal Protection**

Plaintiff alleges that Defendants Jumper, Carreon, and Parsons punished him more severely than the other resident involved in the June 5, 2020 incident because he is African American and the other resident is white. To survive summary judgment on his Fourteenth Amendment equal protection claim, Plaintiff "need[s] to come forward with evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Plaintiff and the other resident were issued disciplinary tickets for the same or similar rule violations and placed on the same resident status following the June 5th incident. The video shows Plaintiff move towards the other resident with enough force to cause the resident to stumble backward, and neither Plaintiff's version of events, nor the video, permit the inference that the other resident used or attempted to use force against Plaintiff at any time. Plaintiff has not presented any evidence suggesting the Behavioral Committee's disciplinary decisions were based upon anything more than the differences in Plaintiff's and the other resident's conduct and their respective disciplinary histories. The record does not permit a reasonable inference that race played a factor. Plaintiff does not assert any equal protection claims against Defendant Perez.

The Court finds that no reasonable juror could conclude that Defendants Jumper, Carreon, Parsons, and Perez violated his constitutional rights.

### Documents Filed Under Seal

The documents filed under seal pursuant to the Court's June 27, 2022, consist of TDF records for the other resident involved in the June 5, 2020 incident. The resident is not a party to this lawsuit, and that the information disclosed therein is generally not in dispute. The Court finds that public disclosure of these documents is not warranted at this time.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion [89] is GRANTED in part and DENIED in part.**

2) **Defendants' Motion [115] is GRANTED. Clerk is directed to modify the docket to reflect that docket entry no. 116 is a summary judgment reply.**

3) **Defendants' Motion for Summary Judgment [86][106] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs.**

4) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present**

on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 8th day of March, 2023.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE